1

2

3

4

5

6

7

8                                UNITED STATES DISTRICT COURT
                                WESTERN DISTRICT OF WASHINGTON
9                                        AT SEATTLE

10    TALVEER GILL,                              CASE NO. C20-939 MJP

11                        Plaintiff,             ORDER DENYING MOTION TO
                                                 DISMISS
12          v.

13    ALEJANDRO N. MAYORKAS,
      Secretary, U.S. Department of
14    Homeland Security; TROY A.
      MILLER, Acting Commissioner, U.S.
15    Customs and Border Protection;
      ADELE FASANO, Director, Field
16    Operations, U.S. Customs and Border
      Protection, Seattle Field Office,
17
                          Defendants.
18

19          Before the Court is Defendants' motion to dismiss.  (Dkt. Nos. 36, 38, 45.)  Having fully

20    considered the motion and responsive briefing, the Court DENIES the motion.

21                                        **Background**

22          Plaintiff Talveer Gill is a Canadian citizen suing Defendants under the Administrative

23    Procedure Act (APA) to challenge the decision by U.S. Customs and Border Patrol (CBP) to

24

cancel his E-2 nonimmigrant visa and deny him entry at the Sumas Port of Entry in December 2018.  (Dkt. No. 1 ("Complaint") at 3.)  E-2 visas are issued to noncitizens who operate or invest in a business located in the United States.  See 8 U.S.C. § 1101(a)(15)(E)(ii).  Plaintiff directs two berry farms in Whatcom County.  (Compl. at 3.)  He was issued an E-2 visa in 2011, and the visa was renewed in 2016.  (Id.)  Plaintiff also had a NEXUS card, which allows pre-screened, low-risk travelers from Canada to be processed at the border more quickly.  (See id.)

Plaintiff began receiving increased scrutiny at the border after the murder of his brother-in-law in January 2017.  Although Plaintiff has no criminal record, he was repeatedly referred to secondary inspection and questioned about his associations with people connected to his brother-in-law and his own trips to Thailand and Mexico.  (Id. at 4–7.)  On December 9, 2018, Plaintiff was detained at the Sumas Port of Entry for approximately seven hours, during which time an immigration officer took his sworn statement.  (Id. at 7.)  (See Supplemental Certified Administrative Record at 13–28.)  Afterwards, the officer informed Plaintiff he was inadmissible because of his associations with people suspected to be involved in drug trafficking and that his visa had been canceled.  (Id. at 8.)  Plaintiff was permitted to return home to Canada.  (Id.)

In a report of the December 9, 2018 incident, dated October 31, 2019, a CBP officer stated that the inadmissibility determination was based on 8 U.S.C. § 1182(a)(2)(C)(i), which provides that any noncitizen who the officer "knows or has reason to believe is or has been an illicit trafficker in any controlled substance or in any listed chemical . . . , or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so . . . is inadmissible."  (Supp. Cert. Admin. Rec. at 74.)  The report also states that Plaintiff was permitted to withdraw his application for admission in lieu of initiating a removal proceeding.  (Id. at 72. ("Disposition:

withdrawal in lieu of NTA [notice to appear].")  See 8 C.F.R. § 239.1 (immigration officer may

issue a notice to appear to initiate removal proceedings).  Plaintiff does not dispute that the

grounds for inadmissibility was for suspected involvement with drug trafficking or that he was

permitted to withdraw his application for admission.  (See Dkt. No. 43 at 2.)  Plaintiff then

applied for a new E-2 visa; filed a Freedom of Information Act request; and submitted a request

for administrative review of the decision to cancel his E-2 visa, which was denied.  (Compl. at 9–

11.)

Defendants filed the instant motion to dismiss.  (Dkt. No. 36.)  While this motion was

pending, the Parties filed a joint submission regarding Plaintiff's motion to compel under Local

Court Rule 37.  (Dkt. No. 42.)  However, because Defendants challenge the Court's jurisdiction,

the Court re-noted the motion to compel for consideration after determining whether there is

jurisdiction over Plaintiff's claims.  (Dkt. No. 44.)

**Discussion**

Defendants move to dismiss under FRCP 12(b)(1) for lack of subject-matter jurisdiction

and under FRCP 12(c) for judgment on the pleadings.  They argue that Plaintiff's claim arises

from or relates to an order of removal, and that the Immigration and Nationality Act (INA)

precludes review of any such claims.  They also contend that Plaintiff has failed to state a claim

for two separate reasons: the doctrine of consular nonreviewability precludes Plaintiff's claim

and the Court lacks authority to grant the declaratory or injunctive relief Plaintiff seeks.

**I.      Subject-Matter Jurisdiction**

Plaintiff seeks review of CBP's decision to cancel his E-2 visa under the Administrative

Procedure Act (APA) and the INA.  The APA contains a strong presumption that Congress

intends judicial review of administrative action, and the courts generally adhere to that

presumption unless there is clear and convincing evidence that Congress intended otherwise.

Allen v. Milas, 896 F.3d 1094, 1003 (9th Cir. 2018).  Defendants do not challenge federal-

question jurisdiction but argue that Congress's clear expression of intent to preclude judicial

review comes in 8 U.S.C. § 1252.  Because Defendants' jurisdictional attack is facial, the Court

presumes the allegations in the complaint to be true and will grant the motion only if Plaintiff

fails to allege an element necessary for subject-matter jurisdiction.  See Safe Air for Everyone v.

Meyer, 373 F.3d 1035, 1038 (9th Cir. 2004).

     A.     Admission Procedures and Limits on Judicial Review of Expedited Removal

A noncitizen arriving at a border port of entry is considered an applicant for admission.

8 U.S.C. § 1225(a)(1).  Having a visa does not grant a right of entry.  8 U.S.C. § 1201(h).

Immigration officers are responsible for determining whether an applicant for admission is

admissible.  8 U.S.C. § 1225(a)(3).

The INA contains provisions for what is known as "expedited removal," which permits

an immigration officer to order the removal of certain noncitizens.  The portion of the statute

relevant here reads:

> If an immigration officer determines that an alien . . . who is arriving in the United
> States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the
> officer shall order the alien removed from the United States without further hearing or
> review unless the alien indicates either an intention to apply for asylum . . . or a fear of
> persecution.

8 U.S.C. § 1225(b)(1)(A)(i).  The two grounds for inadmissibility referenced in this provision are

for fraud or misrepresentation in seeking admission, 8 U.S.C. § 1182(a)(6)(C), and lack of a

valid entry document, 8 U.S.C. § 1182(a).

The INA limits judicial review of expedited removal carried out under § 1225(b)(1).  The

statute provides, in relevant part:

Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review . . .

> (i) . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) . . . ; [or]

> (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title . . . .

8 U.S.C. § 1252(a)(2)(A).

As a result, if an immigration officer determines a noncitizen is inadmissible for either of the two reasons listed—fraud or misrepresentation or lack of a valid entry document—the officer orders the noncitizen removed unless the noncitizen expresses a fear of persecution or an intent to apply for asylum. If the officer orders removal, there is no judicial review.

However, an immigration officer also has discretion to permit a noncitizen to withdraw their application for admission at any time. A noncitizen applying for admission "may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). If a noncitizen withdraws their application for admission, it is "in lieu of removal proceedings . . . or expedited removal." 8 C.F.R. § 235.4. Relatedly, if the immigration officer finds a noncitizen with a visa to be inadmissible, the officer has authority to physically revoke the visa at the border if the noncitizen is notified that they appear to be inadmissible and if the noncitizen requests and is granted permission to withdraw their application for admission. 22 C.F.R. § 41.122(e)(3).

B.      Whether the Jurisdictional Bar Applies

It is relatively straightforward how these laws and regulations apply to what occurred in this case. The immigration officer found Plaintiff inadmissible under 8 U.S.C. § 1182(a)(2)(C)(i) because of his associations with people suspected of involvement in drug trafficking. The officer canceled Plaintiff's visa and, in the officer's discretion, permitted

1    Plaintiff to withdraw his application for admission and depart the border, instead of initiating

2    removal or expedited removal proceedings.  (See Supp. Cert. Admin. Rec. at 72–74.)

3            Despite the fact that there was no order of removal, Defendants argue that the

4    jurisdictional bar under 8 U.S.C. § 1252 applies as a matter of course.  They assert: "Courts

5    routinely dismiss similar claims for lack of jurisdiction, even when raised in a habeas petition."

6    (Dkt. No. 36 at 8–9.)  However, they cite no Ninth Circuit authority directly on point, and the

7    cases they cite do not support such a broad conclusion because they involved claims that were

8    different from the one here.  See Dep't of Homeland Sec. v. Thuraissigiam, 140 S. Ct. 1959

9    (2020) (habeas petition for review of immigration judge's decision affirming decision of asylum

10   officer in expedited-removal proceeding); Pena v. Lynch, 815 F.3d 452, 454 (9th Cir. 2016)

11   (same); Smith v. U.S. Customs & Border Prot., 785 F. Supp. 2d 962, 963 (W.D. Wash. 2011),

12   aff'd, 741 F.3d 1016 (9th Cir. 2014) (habeas petition for review of expedited-removal order).

13   The courts dismissed the claims in these cases because they all involved habeas petitions seeking

14   review of orders of removal that were unreviewable under 8 U.S.C. § 1252.  "With respect to

15   expedited removal orders, . . . the statute could not be much clearer in its intent to restrict habeas

16   review."  Li v. Eddy, 259 F.3d 1132, 1134–35 (9th Cir. 2001), vacated on reh'g as moot, 324

17   F.3d 1109, 1110 (9th Cir. 2003).  It is the absence of an order of removal here that matters.

18           Nevertheless, Defendants make three arguments for why the jurisdictional bar applies.

19   Their first argument is that Plaintiff's claim arises from or relates to an order of removal.  There

20   is no review of a "cause or claim arising from or relating to the implementation or operation of

21   an order of removal" under § 1225(b)(1) or "the application of [§ 1225(b)(1)] to individual

22   aliens."  8 U.S.C. § 1252(a)(2)(A).  As discussed, however, there was no order of removal

23   because Plaintiff was permitted to withdraw his application for admission instead of face

24

removal.  See 8 C.F.R. § 235.4.  (See also Supp. Cert. Admin. Rec. at 72 "Disposition:

withdrawal in lieu of [notice to appear]".)  The other provision also does not strip jurisdiction

because the officer did not "apply" § 1225(b)(1)—the expedited removal provision—to Plaintiff.

Rather, the officer found him to be inadmissible under 8 U.S.C. § 1182(a)(2)(C)(i), which is not

one of the grounds identified under the expedited-removal provision at issue here.

Second, Defendants argue that the immigration officer actually found Plaintiff

inadmissible under 1182(a)(7) for lack of a valid entry document, which would necessarily lead

to expedited removal.  See 8 U.S.C. § 1225(b)(1)(A)(i).  But this is incorrect as a factual matter

because it is not what the immigration officer listed in the report.  (Supp. Cert. Admin. Rec. at

74.)  It is also a circular argument: the officer found Plaintiff inadmissible (association with drug

traffickers), revoked his visa, and then denied him entry on a separate inadmissibility

determination (lack of valid entry document).  It is as if, having found Plaintiff inadmissible for

suspected involvement in drug trafficking, the immigration officer gamely considered his

application afresh.  Even accepting this line of reasoning would not change the analysis because

there was no order of removal.

Defendants' third and main argument is based on a Seventh Circuit decision which

conflates an immigration officer's inadmissibility determination at the border with an order of

removal.  In Odei v. U.S. Dep't of Homeland Security, the facts are similar: immigration officers

determined that Mr. Odei's visa was not valid for the intended purposes of his visit, so they

canceled the visa and, after he dropped his asylum claim, permitted him to withdraw his

application for admission.  937 F.3d 1092, 1093 (7th Cir. 2019).

Mr. Odei argued that there was no order of removal because he withdrew his application

for admission, but the court concluded otherwise:

1

2

3

> This argument misreads the INA. The term "order of removal" is synonymous with the term "order of deportation." <u>Mejia Galindo v. Sessions</u>, 897 F.3d 894, 897 (7th Cir. 2018); <u>Guevara v. Gonzales</u>, 472 F.3d 972, 976 (7th Cir. 2007). The term "order of deportation" refers not only to a decision "ordering deportation" but also to an order "concluding that the alien is deportable." 8 U.S.C. § 1101(a)(47)(A).

4

5

6

7

> That means courts lack jurisdiction to review orders to remove and also orders that an alien is removable. This case falls in the latter category. Border patrol agents determined that Odei was inadmissible under § 1182(a)(7) and cancelled his visa. Under § 1225(b)(1)(A)(i), the Department of Homeland Security was required to remove him once he dropped his asylum claim. Though that never happened because Odei withdrew his application for admission, the initial determination that he was inadmissible under § 1182(a)(7) and § 1225(b)(1)(A)(i) was nonetheless an "order of removal."

8

<u>Id</u>. at 1094.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

        There are a number of flaws in this analysis. As an initial matter, the two cases the court cites in support dealt with habeas petitions challenging removal orders reviewed by the Board of Immigration Appeals (BIA) and issued in contexts that are significantly different from than the one at hand. <u>See</u> <u>Guevara v. Gonzales</u>, 472 F.3d 972, 972 (7th Cir. 2007) (habeas petition challenging BIA decision affirming immigration judge's order of removal); <u>Mejia Galindo v. Sessions</u>, 897 F.3d 894, 895 (7th Cir. 2018) (habeas petition challenging BIA removal order). These cases turned on whether there was a "final" order of removal to review. <u>See</u> 8 U.S.C. § 1101(a)(47)(B) (when an order becomes "final"). When the Seventh Circuit explains in <u>Odei</u> that it lacks jurisdiction to review a determination that a noncitizen is removable, to the extent that statement is based on the decisions the court cites, it references a determination by an immigration judge. This issue may arise when an immigration judge determines a noncitizen is removable but grants a waiver or other cancellation of removal. If the BIA reverses on the waiver or cancellation but says nothing about removal, the immigration judge's determination that the noncitizen is removable is all that stands, so it is the equivalent of an order of removal. <u>See</u> <u>Guevara</u>, 472 F.3d at 972 (7th Cir. 2007).

24

The Seventh Circuit extends that reasoning to an admissibility determination by an immigration officer at the border.  In support, the court cites the INA's definitions section:

> (A) The term "order of deportation" means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.
>
> (B) The order described under subparagraph (A) shall become final upon the earlier of--
>
> > (i) a determination by the Board of Immigration Appeals affirming such order; or
> >
> > (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

8 U.S.C. § 1101(a)(47).

The analogy works only to a limited extent.  Under the expedited-removal provisions, an immigration officer could be considered an "administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation," because officers have authority to determine whether a noncitizen is admissible and, under 8 U.S.C. § 1225(b)(1)(A)(i), subject to expedited removal on specific grounds.  ("Special inquiry officer" means immigration judge. 8 C.F.R. § 3.0.)  In other words, under certain circumstances, immigration officers have authority to issue an expedited-removal order, which is based on their own admissibility determination.  And, at least in Odei, the immigration officers found Mr. Odei inadmissible under one of the grounds that makes a noncitizen subject to expedited removal—lack of a valid entry document, under 8 U.S.C. § 1182(a)(7).

But this is ultimately a strained reading of the statute.  The statute never states that an admissibility determination by an immigration officer shall be treated the same as a determination by an immigration judge that a noncitizen is deportable.  And an admissibility determination is never made a "final" order of removal because it is never reviewed by the BIA.

It simply refers to a different category of decision.  This is illustrated by the Seventh Circuit's own reasoning.  The court writes: "the term 'order of deportation' refers not only to a decision 'ordering deportation' but also to an *order* 'concluding that the alien is deportable.'"  Odei, 937 F.3d at 1094 (emphasis added).  The operative word here is "order"—an admissibility determination is not itself an "order" but rather a predicate for one.

The Seventh Circuit's reading also does not comport with the expedited-removal provisions of the statute and related regulations.  As discussed, there are only two grounds of inadmissibility that lead to expedited removal under § 1225(b): fraud or misrepresentation in seeking admission and lack of a valid entry document.  But, of course, there are other inadmissibility grounds.  See 8 U.S.C. § 1182.  It does not make sense to limit the grounds of inadmissibility for expedited removal if any determination that a noncitizen is inadmissible has the same effect.  See 8 C.F.R. § 253.3(b) (expedited removal provisions apply only to noncitizens determined to be inadmissible under 1182(a)(6)(C) or 1182(a)(7)).  "In the expedited removal process, the [immigration officer] may not charge an alien with additional grounds of inadmissibility other than" fraud or lack of an entry document, and instead must refer the noncitizen to an immigration judge.  Id. at (b)(3). Those regulatory provisions are relevant here, because the immigration officer found Plaintiff inadmissible on a ground that is not subject to expedited removal.

In addition, the Seventh Circuit's interpretation does not square with the statutory and regulatory provisions regarding withdrawal of an application for admission.  The Seventh Circuit describes expedited removal as an automatic process without discretion, even while admitting that removal did not occur.  Odei v. U.S. Dep't of Homeland Security, 937 F.3d 1092, 1094 (7th Cir. 2019).  It is true that 8 U.S.C. § 1225(b)(1)(A)(i) states, in nondiscretionary language, "the

1    officer shall order the alien removed" if found inadmissible under either of the two grounds.  But

2    in § 1225(a)(4) Congress granted the Attorney General discretion to permit a noncitizen to

3    withdraw their application for admission "at any time."  That authority was then delegated to

4    immigration officers.  And when an immigration officer permits a noncitizen to withdraw their

5    application for admission, it is "in lieu of removal proceedings . . . or expedited removal."  8

6    C.F.R. § 235.4.  The whole point is to avoid an order of removal.  That becomes somewhat

7    meaningless under the reasoning of Odei.

8            The immigration officer in this case did not find Plaintiff inadmissible under one of the

9    INA's expedited removal grounds and did not issue an order of removal.  (Supp. Cert. Admin.

10   Rec. at 72–74.)  Rather, the officer permitted Plaintiff to withdraw his application instead of

11   being subject to removal.  (Id. at 72.)  As a result, the jurisdiction-stripping provisions of 8

12   U.S.C. § 1252 do not deprive the Court of subject-matter jurisdiction here.

13   **II.     Judgment on the Pleadings**

14           On a motion for judgment on the pleadings under FRCP 12(c), the Court accepts all

15   factual allegations in the complaint as true and construes them in the light most favorable to the

16   nonmoving party.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  "Judgment on the

17   pleadings is properly granted when there is no issue of material fact in dispute, and the moving

18   party is entitled to judgment as a matter of law."  Id.

19           A.      Consular Nonreviewability

20           The doctrine of consular nonreviewability provides that, "ordinarily, a consular official's

21   decision to deny a visa to a foreigner is not subject to judicial review."  Allen v. Milas, 896 F.3d

22   1094, 1104 (9th Cir. 2018) (internal quotation marks omitted).  "If our review is not required by

23   some other provision of law, such as the Constitution, the APA, or the INA, the long-standing

24

rule foreclosing review of the merits of consular visa decisions is precisely the kind of limitation on judicial review or implied prohibition on relief that forms an exception to the APA's cause of action and review provisions." Id. at 1105 (cleaned up). The doctrine has been applied to consular decisions to revoke a visa. E.g., Saavedra Bruno v. Albright, 197 F.2d 1153 (D.C. Cir. 1999).

The issue is whether the doctrine applies to the immigration officer's decision to revoke Plaintiff's visa. Defendants' chief argument that it does apply is that the Secretary of State has delegated authority to immigration officers to revoke visas, so they should be considered consular officers for purposes of the doctrine. While the doctrine is a rule of decision that is "judicial in origin," Allen, 896 F.3d at 1101, the Executive's statutory authority and delegation of that authority are relevant to ascertaining in which officers the executive branch has vested its authority. See 8 U.S.C. § 1104 (Secretary of State's delegation authority).

As the statute and regulations make clear, consular officers and immigration officials are defined differently and given different obligations. Consular officers issue visas and are granted discretion over related decisions. In contrast, immigration officers have specific limited roles regarding visas which are generally nondiscretionary, and the Secretary of State has delegated to them a far more limited kind of authority. A consular officer is "any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this chapter, for the purpose of issuing immigrant or nonimmigrant visas or, when used in subchapter III, for the purpose of adjudicating nationality." 8 U.S.C. § 1101(a)(9). An immigration officer is "any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this chapter or any section of this

title." 8 U.S.C. § 1101(a)(18).  As is apparent, a consular officer is someone responsible for issuing visas, see also 8 U.S.C. § 1201, whereas an immigration officer is one who performs functions assigned by statute.

Whether to grant a visa is a matter of the consular officer's discretion.  See 8 U.S.C. § 1201(a)(1) ("Under the conditions hereinafter prescribed and subject to the limitations prescribed in this chapter or regulations issued thereunder, a consular officer *may issue* . . . .") (emphasis added).  Consular officials are also granted discretion to revoke visas: "After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." 8 U.S.C. § 1201(i).  There is no judicial review for a visa revocation by a consular officer, "except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title." Id.

In contrast, immigration officers are assigned specific nondiscretionary roles regarding visas. E.g., 8 U.S.C. § 1201(e) ("Each immigrant shall surrender his immigrant visa to the immigration officer at the port of entry, who shall endorse on the visa the date and the port of arrival, the identity of the vessel or other means of transportation by which the immigrant arrived, and such other endorsements as may be by regulations required.").  Another provision illustrates how Congress intended for consular officers to have discretion over decisions relating to visas, whereas immigration officers play an adjacent administrative or law-enforcement role:

> Each nonimmigrant *shall present or surrender to the immigration officer at the port of entry such documents as may be by regulation required*. In the case of an alien crewman not in possession of any individual documents other than a passport and until such time as it becomes practicable to issue individual documents, such alien crewman may be admitted, subject to the provisions of this part, if his name appears in the crew list of the vessel or aircraft on which he arrives and the crew list is visaed by a consular officer, but the *consular officer shall have the right to deny admission* to any alien crewman from the crew list visa.

1    8 U.S.C. § 1201(f) (emphasis added).  Immigration officers have no role regarding visa

2    applications.  See 8 U.S.C. § 1202.  Even in their marquee role of making admissibility

3    determinations, an immigration official may only find a noncitizen applicant inadmissible for

4    specific reasons.  See 8 U.S.C. § 1201(h) (inadmissibility must be based on "this chapter, or any

5    other provision of law."); 8 U.S.C. § 1182 (grounds of inadmissibility).

6           The Secretary of State delegated full authority to a consular officer to revoke a

7    nonimmigrant visa "at any time, in his or her discretion."  22 C.F.R. § 41.122(a).  See also 22

8    C.F.R. § 42.82 (same).  In contrast, the Secretary delegated limited authority to immigration

9    officers to revoke visas only for specific reasons, and in an administrative way.  The provision

10   relevant here provides: "An immigration officer is authorized to revoke a valid visa by physically

11   canceling it in accordance with the procedure described in paragraph (d) of this section if: . . . (3)

12   The alien is notified . . . by an immigration officer at a port of entry that the alien appears to be

13   inadmissible to the United States, and the alien requests and is granted permission to withdraw

14   the application for admission."  22 C.F.R. § 41.122(e).  The "procedure" specified in paragraph

15   (d) simply provides, "a nonimmigrant visa that is revoked shall be canceled by writing or

16   stamping the word 'REVOKED' plainly across the face of the visa, if the visa is available to the

17   consular officer."  In other words, this regulation authorizes an immigration officer to physically

18   write on a visa to cancel it if the officer finds the noncitizen inadmissible, under an applicable

19   provision of the INA or other law, and the noncitizen requests and is granted permission to

20   withdraw their application for admission.  These are administrative and law-enforcement

21   functions, not signs of discretionary authority to which courts must defer.

22          The doctrine of consular nonreviewability is based on "the discretion courts afford

23   consular officers."  Allen v. Milas, 896 F.3d 1094, 1102 (9th Cir. 2018).  This is in part out of

24

1    recognition that decisions on visas are sometimes political decisions or matters of diplomacy that

2    are left to the executive branch under the Constitution.  Saavedra Bruno v. Albright, 197 F.3d

3    1153, 1159 (D.C. Cir. 1999).  "[W]here Congress entrusts discretionary visa-processing and

4    ineligibility-waiver authority in a consular officer or the Attorney General, the courts cannot

5    substitute their judgments for those of the Executive."  Allen, 896 F.3d at 1102.  It follows that,

6    where congress has not entrusted an official with discretionary authority over the issuance or

7    revocation of visas, the doctrine of nonreviewability does not apply.  Indeed, a nondiscretionary

8    decision by a consular officer—such as a failure to act on an application at all, for eight years—

9    is not entitled to protection from judicial review.  See id. at 1108 (citing Patel v. Reno, 134 F.2d

10   929, 932 (9th Cir. 1997)).  See also Ruston v. U.S. Dep't of State, 29 F. Supp. 2d 518, 523 (E.D.

11   Ark. 1998) (nondiscretionary duty to notify of revocation if practicable).

12          Both the purpose and function of the doctrine and the delineation of discretionary and

13   nondiscretionary authority regarding visas in the INA and applicable regulations counsel against

14   applying the doctrine of consular nonreviewability to the facts at issue here.  See also American

15   Academy of Religion v. Chertoff, 463 F.Supp.2d 400, 418 (S.D.N.Y. 2006) ("The doctrine of

16   consular nonreviewability applies to review of a consular official's decision to issue or withhold

17   a visa, not to the decisions of nonconsular officials and certainly not to DHS.")  At least one

18   other court has applied this line of analysis to find that a plaintiff in a similar position could

19   challenge an immigration officer's admissibility determination.  See Atanackovic v. Duke, 399

20   F. Supp. 3d 79 (W.D.N.Y. 2019).

21          The cases Defendants cite are not particularly persuasive.  In Doan v. I.N.S., the plaintiff

22   applied as a refugee for a waiver of grounds of excludability and was denied by the INS district

23   director, who was not technically a "consular officer."  160 F.3d 508 (8th Cir. 1998).  However,

24

1    the court found the INS district director was the "functional equivalent of a consular official,

2    because he is an Executive Branch official, located outside the United States, deciding questions

3    of admissibility brought before him by aliens who are also located outside the United States." Id.

4    at 509.  The INS district director was vested with discretionary authority to grant a waiver if it

5    would be in the "public interest."  The immigration officer here did not have or exercise similar

6    authority in finding Plaintiff inadmissible and revoking his visa.

7            Matushikina v. Nielsen is more apt but still distinguishable.  877 F.3d 289 (7th Cir.

8    2017).  In Matushikina, the Seventh Circuit dismissed a claim challenging an inadmissibility

9    determination by an immigration officer, finding it was barred by the doctrine of consular

10   nonreviewability.  Ms. Matushikina was determined inadmissible in 2009 when she attempted to

11   enter on a visitor's visa.  She later applied for an immigrant visa but her application was denied

12   because of the 2009 inadmissibility determination.  While she ostensibly sued to challenge that

13   inadmissibility determination, the court found that she was actually attempting to challenge the

14   visa denial, and pointed out both the gap in time between the 2009 inadmissibility determination

15   and her 2016 lawsuit as well as her failure to challenge the CBP's determination

16   administratively:

17           The timing of Matushkina's suit is telling. Instead of filing suit after her nonimmigrant
             visa was cancelled and CBP entered the inadmissibility determination in the lookout
18           system in 2009, she filed suit in 2016 after the Consulate denied her immigrant visa
             application. And the relief Matushkina seeks is equally telling. She wanted the district
19           court to declare invalid CBP's determination that she misrepresented something on her
             earlier visa application and to declare that she did not make a material misrepresentation.
20           The end result of either relief explains why consular nonreviewability bars Matushkina's
             claim: each would remove an obstacle for her visa application, . . . .
21
     Id. at 295.
22
             Even following this line of analysis, there are not enough facts in evidence to determine
23
     that Plaintiff is attempting a similar end-run around consular nonreviewability.  He did pursue
24

1   administrative review, unlike Ms. Matushikina.  And while Defendants state that Plaintiff's

2   application for a new E-2 visa was denied, those facts are not in evidence, nor are facts

3   pertaining to the reason for any such denial.  As a result, even if the Court adopted the Seventh

4   Circuit's analysis, Defendants would not be entitled to judgment as a matter of law.

5          B.      The Court's Authority to Grant Relief

6          Defendants' final argument for dismissal is that the Court cannot grant the relief Plaintiff

7   seeks.  Specifically, that the Court lacks authority to order the Department of State to issue

8   Plaintiff another E-2 visa or reissue his previous one because the Department is not a party and

9   the decision to issue a visa is unreviewable absent a narrow exception for constitutional claims.

10  See Allen v. Milas, 896 F.3d 1094, 1105–06 (9th Cir. 2018).

11         Defendants point to the jurisdiction-stripping provision, which states that "no court

12  may . . . enter declaratory, injunctive, or other equitable relief in any action pertaining to an order

13  to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically

14  authorized in a subsequent paragraph of this subsection."  8 U.S.C. § 1252(e)(1).  However, as

15  discussed, there was no "order to exclude" Plaintiff here; he was permitted to withdraw his

16  application for admission.  This provision does not apply.

17         Finally, Plaintiff does not ask the Court to order the State Department to issue him a new

18  visa.  He asks for a finding that the cancellation of his visa was arbitrary and capricious or

19  otherwise contrary to law and for an order directing Defendants to take appropriate corrective

20  action, "including, but not limited to, reversing the decision to cancel Mr. Gill's E-2 visa and

21  admit Mr. Gill to the United States."  An order to take corrective action of some sort, even if it

22  falls short of reversing the decision to cancel his visa, would provide relief and does not appear

23  to be outside the Court's authority at this stage.

24

***

In sum, the Court finds that the INA's jurisdiction-stripping provisions and the doctrine of consular nonreviewability do not apply to the facts of this case.  The Court further finds that it has authority to grant Plaintiff relief.  Therefore, Defendants' motion to dismiss and for judgment on the pleadings is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 3, 2021.

Marsha J. Pechman
United States Senior District Judge